ion, have been considered and found to be without merit.

Accordingly, after consideration of the administrative record and the submissions of the parties, with oral argument of counsel, plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Plaintiffs' petition is dismissed.

**HAWTHORNE OIL & GAS CORPORATION, Appellant,**

v.

**DEPARTMENT OF ENERGY and Scurlock Oil Company, Appellees.**

No. 5–50.

Temporary Emergency Court of Appeals.

Submitted Jan. 20, 1981.

Decided April 24, 1981.

Dan Keefe, Charles N. Wooten, Ltd., Lafayette, La., for appellant Hawthorne Oil and Gas Corp.

Arthur S. Weissbrodt, Dept. of Energy, Washington, D. C., with whom Larry P. Ellsworth, Washington, D. C., on brief, for appellee Dept. of Energy.

Before INGRAHAM, ESTES and BECKER, Judges.

BECKER, Judge.

Appellant Hawthorne Oil and Gas Corporation (Hawthorne) appeals from a final judgment of the United States District Court for the Western District of Louisiana

(Record on Appeal, R. hereinafter, 129) dismissing without prejudice a complaint of Hawthorne seeking a declaratory judgment and injunctive relief against the appellees Department of Energy (DOE) and Scurlock Oil Company (Scurlock). The final judgment, from which the appeal was taken, was accompanied by an opinion of the district court entitled "Ruling on Motion" (R. 125–128).

The final judgment of the district court was entered, after notice and hearing,[1] on the motion of DOE to dismiss, and memoranda in support containing a summary of and part of the underlying administrative record (R. 23–63). Also filed and considered by the district court were a motion of Hawthorne to deny dismissal of the complaint, a memorandum of Hawthorne in support thereof (R. 73–79, 101–116), and of DOE in opposition thereto (R. 74–79, 117–121, 122–124). There was no formal offer of evidence at the hearing on the motion to dismiss, but without objection the material uncontroverted facts concerning the history and status of the administrative and judicial proceedings were fully developed prior to final judgment in the above described proceedings.

### Filing of The Complaint and Answer

The complaint of Hawthorne, that was dismissed without prejudice by the district court, was in one count, and entitled "Complaint For Declaratory Judgment And Injunction" (R. 1–70). It asserted jurisdiction only "under the Federal Declaratory Judgment Act, 28 U.S.C. 2201" even though it sought immediate conventional injunctive relief against DOE and Scurlock. No defect in this regard was noted or ruled on by the district court in its opinion or judgment of dismissal without prejudice.

Appellee Scurlock filed answer (R. 15–19) preserving the defense that no claim for relief was stated and asserting two additional defenses, including denials of some material allegations of the complaint described below.

1. Transcript of Proceedings, Tr., following R. page 131 and certificate of clerk.

### Jurisdiction

The clear jurisdiction of the district court and of this court is not an issue on this appeal.

### Decision of the District Court

In its findings of fact and conclusions of law which accompanied its final judgment of dismissal without prejudice appealed from, the district court stated (R. 125–128):

In May 1977, the Economic Regulatory Administration of the Department of Energy began enforcement proceedings against Hawthorne Oil & Gas Corporation by issuing a notice of probable violation. The notice alleged in essence that Hawthorne had overpriced domestically produced crude oil in violation of the Mandatory Petroleum Price Regulations. After Hawthorne's responses to the notice were considered, the Department issued a proposed remedial order (PRO) on May 30, 1978. The PRO alleged that Hawthorne had incorrectly certified production from its drilling unit, and had failed to establish a unit base production control level. As a consequence, Hawthorne had allegedly overcharged Scurlock Oil Company approximately $600,000. Among other actions, the PRO proposed that Hawthorne recertify its product for lower tier prices. Eleven months later, Hawthorne filed a notice of objection to the PRO and submitted a statement of objections on September 12, 1979, to the Department's Office of Hearings and Appeals.

Less than one month later, Hawthorne filed suit in this court against the Department and Scurlock Oil in which it seeks an order: 1) permitting it to compute its base production control level on a per lease rather than per unit basis; 2) requiring Scurlock to pay upper tier prices pending a final agency determination; and 3) enjoining the agency's enforcement of mandatory price regulations as to Hawthorne. The Department thereafter filed a motion to dismiss which the

court took under advisement after oral argument.

The Department contends that Hawthorne's suit should be dismissed because it is not ripe for adjudication and because the corporation has failed to exhaust its administrative remedies. Hawthorne, on the other hand, argues that without immediate judicial review it is faced with the dilemma of either complying with the PRO and losing substantial income which, under the regulatory scheme, it cannot recoup or ignoring the PRO and subjecting itself to possible criminal and civil liability.

Generally, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corporation*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638, 644 (1938). In the instant case, it is apparent, as the plaintiff admits, that additional steps remain in the administrative procedure. At present, Hawthorne is appealing the PRO to the Office of Hearings and Appeals. A decision unfavorable to Hawthorne would result in the issuance of a remedial order which is then appealable of right to the Federal Energy Regulatory Commission. Only a final decision by this commission adopting, rejecting, or amending the remedial order constitutes final agency action for the purposes of judicial review, 42 U.S.C. § 7193(c).

The policies behind the exhaustion rule have recently been articulated by the Supreme Court: "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17, 25 (1972). In the present litigation it is evident that factual issues still await development and that the agency's expertise will be helpful for a resolution of these issues. Moreover, there exist obvious opportunities within the administrative framework for a resolution of this dispute which will moot the present proceeding—the Office of Hearings and Appeals may rule in Hawthorne's favor, and determine that a remedial order should not issue and even if a remedial order issues, the Federal Energy Regulatory Commission may in turn reject the order. Therefore, the underlying policy arguments for the exhaustion doctrine apply to the case at hand.

In addition, Hawthorne's argument that it faces a dilemma is not persuasive. Hawthorne advances two possible scenarios: 1) after complying with the PRO and losing substantial revenues, it prevails on the merits of the claim but is unable to recoup the difference between upper and lower tier prices; or, 2) after ignoring the PRO, it loses on the merits and faces possible criminal and civil liability. However, it is just as possible that Hawthorne's fears are unfounded. For example, Hawthorne may comply with the PRO and fail in its legal battle to have the oil recertified at the higher price; or Hawthorne may ignore the PRO but prevail on its argument that the oil should be priced at the higher level. Moreover, the very existence of a dilemma such as that described by Hawthorne has been discounted by the courts:

> The possibility that the DOE may have disagreed with Pennzoil's application of the regulatory requirements to the Walker Creek Unit cannot be said to have made compliance impossible any more than that possibility, which is always present, makes compliance with all regulatory requirements impossible. Nor was compliance made impossible by the fact that, by complying, Pennzoil would have lost revenues which it could not have subsequently recovered if and when the regulatory requirements were declared invalid. If the mere possibility that regulations will in the future be found invalid could excuse present and past noncompliance, no agency could enforce its regulations before obtaining a judicial declaration of their validity.

*Pennzoil Co. v. Department of Energy,* 480 F.Supp. 1126, 1138 (D.Del.1979). *See also Diversified Chemical and Propellants Company v. Federal Energy Administration,* 432 F.Supp. 859, 863–864 (N.D.Ill. 1977).

For these reasons, the defendant's motion to dismiss is granted.

### Affirmance of Judgment of the District Court

We agree with the reasoning of the district court and affirm the final judgment of dismissal without prejudice.

### Contentions of Appellant

In substance, on this appeal appellant Hawthorne contends that: "The issues presented in the instant case are purely legal. No further development of the factual record is needed." (Appellant's Brief, App. Br. hereinafter, 12). This contention is correct concerning the facts on which the trial court based its dismissal without prejudice, but is not correct concerning the underlying administrative proceedings, because the appellant Hawthorne does not accept the crucial factual findings and conclusions of the Proposed Remedial Order (PRO).

At the same time the appellant admits that it is subject to DOE regulations. It contends incorrectly that DOE has made its final decision on the proper certification of some of the crude oil in issue, citing a letter from a DOE Regional District Manager of Enforcement (R. 114), summarizing the PRO, the subject of administrative review, expressly and correctly stating that the letter is not to be considered an interpretation or opinion (R. 114).

Based on these contentions, and the record, appellant contends that the relief sought by appellant should have been granted by the district court (App. Br. 9), and that this Court should reverse the district court and grant the relief sought by appellant (App. Br. 23).

Appellant contends that the issues presented for review are as follows (App. Br. 1):

A. Is the matter ripe for judicial review?

Has there been final agency action by the Department of Energy?

Is Hawthorne faced with a real or fictitious dilemma?

B. Can equitable relief sought by Hawthorne be reconciled with *Pennzoil Company v. Department of Energy,* 480 F.Supp. 1126 (D.C.Del.1979)?

Appellant Hawthorne proceeds to argue that each of the foregoing questions listed under issues for review should be answered in the affirmative, except the last question in Part A which should be answered "real"; and that, as a consequence, judgment should be entered on this appeal granting the relief sought in the complaint of appellant.

### Contentions of Appellee DOE

DOE contends that the judgment of the district court should be affirmed on the basis of a negative answer to each of the following questions listed in its brief as issues presented for review (Appellee's Brief 1):

1. In view of the ongoing enforcement proceedings before the agency against Hawthorne Oil & Gas Company, involving the matters raised here, did the district court err in holding that Hawthorne must exhaust its administrative remedies before seeking judicial review?

2. Is an action ripe for judicial review when a company, which admits it is not subject to a final order in the ongoing enforcement proceedings before the agency, seeks a judicial determination that as a factual matter it is in compliance with the regulations and public interpretations of the agency?

### The Underlying Administrative Proceedings

In the manner described above, the following facts, among others, were established, as accurately summarized in the Pro-

posed Remedial Order issued May 30, 1978 (R. 46–63) and in later proceedings in the district court (R. 64–131 and Tr. 131 *et seq.*).

On May 10, 1977 the Economic Regulatory Administration (ERA) of DOE issued a Notice of Probable Violation (NOPV) to Hawthorne pursuant to 10 C.F.R. § 205.191, alleging that certain sales of crude oil by Hawthorne were made at prices in excess of prices permitted by the regulations of DOE. After an oral conference, Hawthorne on May 31, 1977 filed a written reply to the NOPV with documentation and further information. After consideration of the written and oral responses of Hawthorne the ERA found that violations of 6 C.F.R. § 150.354 and 10 C.F.R. § 212.73 and § 212.75 had occurred, and continued to occur, as described in the PRO which was issued May 30, 1978 (R. 46). The PRO found that Hawthorne was a Louisiana producer of domestic crude oil as defined in 10 C.F.R. § 212.31 and subject to ERA rules and regulations (which Hawthorne admits, App. Br. 12); that, following inception of FEA (predecessor of DOE) regulations, Hawthorne erroneously determined that two leased drilling areas for Alliance Sand Reservoir A (ASRA) Tract 1 (Hardscramble Well) and Tract 2 (Henry Well) were separate properties and as a result Hawthorne did not complete a unit base production control level (UBPCL)[2] for Tract 1; that Hawthorne did complete a base production control level (BPCL)[3] for Tract 2 using 1972 production from only the Henry Well; that as a result of this error Hawthorne from 1973 through the audit period in 1976 classified volumes of condensate (crude oil) produced from the ASRA Unit up to an amount equal to the BPCL as "old" crude oil and classified the excess volumes produced in excess of the BPCL as "new" or "released" crude oil; that condensate (crude oil) produced from the ASRA Unit was sold to Scurlock from September 1, 1973 through November 30, 1976; that condensate incorrectly classified as "new" or "released" oil in excess of the ceiling price for lower tier "old" oil was sold to Scurlock, resulting in overcharges of $597,228.26 (R. 54); that Hawthorne was continuing the violation (R. 46). The PRO contemplated that Hawthorne would bring itself into immediate compliance with 10 C.F.R. § 212 by recertifying the BPCL for the ASRA Unit pursuant to 10 C.F.R. § 212.75 based on the determination of ERA "that the ASRA Unit is a property, and ... Tract 1 and Tract 2 are not separate properties" (R. 60).

Although under the rules effective at the time, Hawthorne was required to file a Notice of Objection within 10 days of service of the PRO, and its Statement of Objections within 30 days of service of the PRO, it did not file its Notice of Objections until August 1, 1979, and its Statement of Objections with the Office of Hearings and Appeals (OHA) until September 12, 1979. Under the interim rules effective when the PRO was issued, upon failure of Hawthorne to file a timely Notice of Objection OHA could have issued a final PRO, which if entered and not contested would have become a final and binding order not subject to judicial review. Title 42 U.S.C. § 7193(b). OHA, however, in its discretion decided to accept the untimely filing by Hawthorne of its Statement of Objections. This reactivated the administrative proceedings. Shortly afterward Hawthorne filed its complaint against DOE and Scurlock, praying for a declaratory judgment and injunctive relief, without awaiting completion of the administrative procedures reactivated by its Notice and Statement of Objections.

*Summary of the Complaint of Hawthorne*

On October 1, 1979, Hawthorne filed in the district court a complaint against DOE and Scurlock for declaratory judgment and injunctive relief (R. 1).

The complaint in substance stated that Hawthorne's business activity in selling condensates as a producer is controlled by

---

2.  UBPCL is used hereinafter for Unit Base Production Control Level.

3.  BPCL is used hereinafter for Base Production Control Level.

regulations of DOE, and its predecessors; that mandatory petroleum price regulations were promulgated in an attempt to regulate, direct and control marketing and sale of crude oil in the United States; that Hawthorne acquired by two separate lease instruments two separate tracts of land in Louisiana; that effective February 1, 1972, the Louisiana Department of Conservation (LDC) issued an order for ASRA which included portions of both leased tracts, as well as other tracts of land, thereby creating a drilling unit and ordering forced pooling of all such tracts and designating Hawthorne Hardscramble Well No. 1 as the unit well, which at the time was the only well producing from the drilling unit; that on April 21, 1972, the LDC authorized Hawthorne to drill an alternate unit well (Henry Well) and to produce the allowable production from the official unit well, the alternate unit well or both wells at the option of Hawthorne; that after November 1, 1972, the official unit Hardscramble Well no longer produced and all further production in the ASRA by Hawthorne was then from the alternate unit Henry Well; that Hawthorne "traditionally accounted for production from each lease separately for various business reasons and requirements" in the absence of official guidance as to the interpretation of "property", except that contained in the regulations as being the right to produce domestic crude oil which arises from a lease or a fee interest; that the "property" definition was necessary in order for producers to compute properly a "base production control level" (BPCL) as defined in the regulations in order to determine the amount of production which must be certified "old" oil which had a maximum lawful selling price; that Hawthorne acted in good faith to comply with the regulations under the Emergency Petroleum Allocation Act and computed the BPCL in order to determine the sale price of its crude oil (condensate) separately for each lease located in the ASRA; that FEA, predecessor to DOE, issued Rulings 1975–15, 1977–1 and 1977–2 purporting to clarify the term "property" to reflect the actual production entities utilized by the industry and made the rulings retroactive to 1973; that based on these rulings DOE issued a PRO to Hawthorne that would require Hawthorne to recompute its BPCL on the basis of all wells in the ASRA unit and to reclassify certain condensate sales from Hawthorne to Scurlock from "new" or "released" oil to lower tier "old" oil at lower tier prices resulting in a proposed refund from Hawthorne to Scurlock of $597,228.26 in overcharges; *that this PRO "is presently the subject of an administrative appeal pending in the Office of Hearings and Appeals, Department of Energy, Washington, D.C."* (emphasis added); that plaintiff also owned a group of leases in Louisiana outside those described above; that (after the issuance of the PRO) relying on these latter leases being totally "outside" the said unit (in 1978), Hawthorne drilled another well, Scanlan No. 1, which was unproductive in the "Sub Alliance Sand" but produced on completion in the "Alliance Sand"; that LDC issued an order enlarging the ASRA unit by adding about 600 acres to the old unit, dissolved the old unit, and named the Scanlan Well No. 1 as the new unit well, the Henry No. 1 Well as the alternate unit well and deleted the Hardscramble Well from the unit; that the Scanlan Well and its sales point for condensate are about one mile from any previous well, its tank battery separate from all other wells, without connection of its facilities with the Henry Well or the abandoned facilities for the Hardscramble Well; that "after repeated oral and written requests from offices of the plaintiff seeking advice on the method by which to classify the condensate production" of the later drilled Scanlan No. 1 Well DOE has advised Hawthorne that inasmuch as the LDC "has supplemented its designation of the original unit, the Scanlan Well is not a 'new' property and is not entitled to receive upper tier crude oil prices."

Appellant Hawthorne further states that under this interpretation the property outside the old unit would still be part of a producing property, which produced every month in 1972, and therefore subject to a UBPCL; that because of the disallowance

of the Scanlan No. 1 Well, drilled in 1978, as a separate property, Hawthorne is losing about $11,000 per month which cannot be recovered by later recertification to the purchaser Scurlock; that Hawthorne has filed an appropriate administrative appeal with OHA, asserting that its price determinations, based on separate accountability for each lease (well), regardless of unitization, is well founded under "regulations, rulings, exceptions and interpretations," of DOE; that no hearing has been held before OHA and *"no final decision on the matter in controversy has been made which if adverse to plaintiff's position would have exhausted its administrative remedies entitling it to a direct action for review in this District Court of the United States"* (emphasis added); that Hawthorne will suffer irreparable injury from the requirement of DOE to certify its condensate production from the new (later drilled) Scanlan Well No. 1 on a unit base production control level at lower tier old oil price rather than at upper tier new oil price; that if it were to change its certification of the classification on the Scanlan Well No. 1 it may be subjected to penalties and criminal sanctions; that it has no adequate remedy at law; that the regulations promulgated under the EPAA are unconstitutional and void because (a) they are discriminatory in application, (b) are vague and indefinite, (c) retroactive rulings made thereunder take property without due process of law and (d) enforcement thereof violates due process and equal protection of the laws.

Hawthorne further stated that a delay in asserting and determining the rights of plaintiff will cause loss and damage to plaintiff in causing sale of its production of gas condensate at a price fixed by regulations at less than the price to which Hawthorne is entitled.

Hawthorne prayed for the following relief:

1. Pending final determination of the issues, that Scurlock be ordered to pay the difference between upper tier "new" or "released" oil prices and lower tier "old" oil prices on condensate from Scanlan No. 1 Well into the court to be held until final order of the court;

2. Hawthorne be allowed (by court order) to compute its BPCL on a per lease basis for purposes of price computation and certification under regulations promulgated under the EPAA;

3. Enforcement against Hawthorne of mandatory price regulations promulgated under the EPAA requiring a unit BPCL be enjoined during pendency of the action, and permanently enjoined; and

4. General equitable relief.

### Issue for Decision

From the foregoing review of the record of the district court it clearly appears that the sole basis of the decision and final judgment of the district court dismissing the complaint without prejudice was the failure of the appellant Hawthorne to exhaust its administrative remedies, before attempting to secure judicial intervention, judicial review of and judicial determination of the issues in the ongoing administrative actions.

The district court did not find it necessary or desirable to rely on the related but separate ground of the motion to dismiss, that the controversy was not ripe for adjudication. The separate ripeness doctrine is explained in 5 Mezines, Stein & Gruff, *Administrative Law* § 48.01, 48–2, 48–3; Davis, *Administrative Law of The Seventies*, Chapter 21, § 21.05–§ 21.08, 469–484; Davis, *1980 Supplement to Administrative Law Treatise* §§ 20.00 to 20.11.

### Decision on the Issue of Exhaustion of Administrative Remedies

We agree that the failure of the appellant Hawthorne to exhaust its administrative remedies was an adequate and proper basis for the action of the district court in dismissing the action without prejudice.

In the absence of exceptional circumstances, not present in this action, a party may not maintain a judicial action to

secure relief from a supposed, or threatened, injury by administrative action until the available and prescribed administrative remedies have been exhausted. This is the controlling rule of law relied on by the district court, which properly cited in support of its decision the leading cases, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938) and *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). This rule of law is explained and the many decisions in support are cited in 5 Mezines, Stein & Gruff, *Administrative Law*, Chapter 49, § 49.01, 49–1 to 49–6; Davis, *Administrative Law of The Seventies*, Chapter 20, § 20.01–§ 20.08, 446–468; Davis, *1980 Supplement to Administrative Law Treatise*, Chapter 20, § 20.00–§ 20.11, 127–142. There are some exceptions to the exhaustion doctrine.

We have examined the general and special exceptions to the general rule requiring exhaustion of administrative remedies before maintaining a judicial action to prevent supposed or threatened injury from administrative action. The exceptions are discussed and analyzed categorically in 5 Mezines, Stein & Gruff, *supra*, § 49.02, 49–7 —49–29, and in the works of Davis, *supra*, in a different fashion.

■ The general exceptions to the exhaustion doctrine summarized in 5 Mezines, Stein & Gruff, *supra*, § 49.02, 49–7 to 49–10, are as follows (footnotes omitted):

(1) The agency cannot supply an adequate remedy;

(2) The agency action will cause irreparable injury;

(3) The agency has acted in excess of its statutory authority; or

(4) Pursuit of an administrative remedy would be futile.

To these can be added an overlapping exception "where the agency has clearly violated the constitutional or statutory rights of the party seeking prior restraint." *Seven-Up Co. v. FTC* (C.A.8 1973) 478 F.2d 755, *cert. denied*, 414 U.S. 1013, 94 S.Ct. 379, 38 L.Ed.2d 251. *American General Ins. Co. v. FTC* (C.A.5 1974) 496 F.2d 197 and *United States v. Feaster* (C.A.5 1969) 410 F.2d 1354, *cert. denied*, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426, specifying clear violation of a constitutional right; *Sterling Drug, Inc. v. FTC* (C.A.D.C.1971) 450 F.2d 698, specifying clear violation of a constitutional or statutory right.

The special exceptions concerning important international questions and Title 5 U.S.C. § 704 of the Administrative Procedure Act are not relevant here.

■ We find application of none of the exceptions warranted in the circumstances of this case. *First*, the agency in this case provides an adequate remedy which is ultimately subject to adequate judicial review as demonstrated in a similar case. See *Grigsby v. Department of Energy* (Em.App. 1978) 585 F.2d 1069, on petition for rehearing, 585 F.2d at 1080–1086 concerning the "North Jennings Property." *Cf.* 5 Mezines, Stein & Gruff, *supra*, § 49.02[1].

*Second*, there is no showing that the proposed action of DOE will cause irreparable injury whether it is assumed that appellant will or will not prevail in the controversy with DOE. *Cf.* 5 Mezines, Stein & Gruff, *supra*, § 49.02[2].

*Third*, there is no showing, indeed there is no contention, that DOE has acted in excess of its statutory authority. *Cf.* Mezines, Stein & Gruff, *supra*, § 49.02[3].

*Fourth* and finally, there is no showing that pursuit of the administrative remedies would be futile. *Cf.* 5 Mezines, Stein & Gruff, *supra*, § 49.02[4]. The case of *Grigsby v. DOE* (Em.App.1978), *supra*, 585 F.2d 1069, 1080 to 1086 is adequate to demonstrate that in the event appellant Hawthorne is right, and fails to convince DOE, and secure administrative relief, it can secure judicial relief.

In summary, we conclude that the district court's application of the doctrine requiring exhaustion of administrative remedies was correct.

### Comments on Additional Contentions of Appellant

In its complaint and briefs, appellant Hawthorne based some arguments for relief

on the drilling of the new producing well Scanlan No. 1 long after the PRO was issued. There is no legal or factual materiality of this new well to the challenged ongoing administrative proceeding. The status of the production of the new well may be the subject of administrative proceedings not begun when the action below was filed. The unsubstantiated contention that, despite its express reservations and obvious lack of final authority, the July 30, 1979 letter-opinion of the District Manager, Southwest District Enforcement, of DOE (R. 114), was a final administrative decision on the issues raised by the Statement of Objections of appellant Hawthorne to the PRO of 1977 is unfounded for obvious reasons too numerous to state in this opinion. The possible, nonexistent in 1977, administrative proceedings in respect to pricing of the production of the new well Scanlan No. 1, were obviously not a final administrative decision on any material question.

Further, the decision in *Pennzoil Company v. Department of Energy* (D.C.Del.1979) 480 F.Supp. 1126 is consistent with the decision of the district court in this case, and a portion thereof was properly relied on by the district court.

For the foregoing reasons, it is

ORDERED that the judgment of the district court be, and it is hereby, affirmed.