**MISSOURI TERMINAL OIL COMPANY, Plaintiff-Appellant,***

v.

**James B. EDWARDS, et al., Defendants-Appellees.***

**No. 8–12.**

Temporary Emergency Court of Appeals.

Argued July 21, 1981.

Decided July 21, 1981.

Filed Aug. 28, 1981.

Michael J. Madigan, Akin, Gump, Strauss, Hauer & Feld, Washington, D. C., with whom Jerry E. Rothrock and Leslie K. Dellon, Edward D. Weakley, and H. William

---

* The parties are designated in the opinion in the manner in which they submitted their briefs.

Hinderer, III, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo., of counsel, were on the brief, for appellant Missouri Terminal Oil Co.

Russell L. Weaver, Dept. of Energy, Washington, D. C., with whom Thomas H. Kemp, Joan Wilbon, Dept. of Justice, Washington, D. C., of counsel, were on the brief, for appellees Dept. of Energy, et al.

Before BECKER, BROWN and POINTER, Judges.

WESLEY E. BROWN, Judge.

This proceeding arises from an order of the United States District Court for the Eastern District of Missouri, certifying to this Court a question described as a substantial issue of constitutional law, pursuant to Section 211(c) of the Economic Stabilization Act of 1970, 12 U.S.C.A. § 1904, Note.[1] Following oral argument on July 21, 1981, the Court determined that the District Court lacked jurisdiction of the case for appellant's failure to exhaust its administrative remedies. Accordingly, an Order was entered on that date vacating the injunction entered by the District Court, and Judgment was entered, dismissing the complaint for reasons to be stated in this Opinion.

On September 10, 1980, the Office of Enforcement of the Economic Regulatory Administration (ERA) issued a Notice of Probable Violation (NOPV) directed to Missouri Terminal Oil Company, alleging that it had found reason to believe that appellant had violated provisions of the Mandatory Petroleum Price Regulations, 10 C.F.R. Part 212, during the period of March thru July, 1971. (PX 1). Instead of answering this charge, appellant sought continuances and stays of the proceedings pending a decision by the agency as to whether or not the matter would be referred to the Department of Justice for criminal prosecution. As to this, appellant claimed that it would be a violation of due process to require Missouri Terminal to raise all of its defenses in a civil administrative proceeding when those matters might be the subject of a later criminal investigation.

On January 27, 1981, the Office of Hearings and Appeals denied appellant's application for stay. Missouri Terminal immediately filed this suit, claiming that the agency had denied it due process of law. In seeking injunctive relief against further agency proceedings, appellant claimed that it would sustain irreparable harm if it were forced to answer the Notice of Probable Violation, since it would have to "provide the ERA with an incalculable number of documents and substantial evidentiary material from its files, at its own expense;" that it would be required to "furnish statements from its agents or employees," and "set forth each and every possible answer, defense or fact on its behalf"—"all of which could result in plaintiff's furnishing information which would violate the Constitutional rights to due process of either it or its agents and employees." (Record 2, Complaint filed 2/3/81).

As the matter evolved in the District Court, Missouri Terminal offered evidence at a hearing conducted on March 30, 1981 to the effect that its General Manager, Ned Riggin, would invoke his constitutional privilege against self-incrimination and refuse to certify and sign any response or answer to the Notice of Probable Violation issued by the Department of Energy. (Trans. of Hearing, 3/30/81, R. 14, pp. 23–24).

The District Court continued its Order of Injunctive Relief Pendente Lite entered on February 10, 1981, and Certified the following question of law to this Court: (R. 16)

1. "(c) In any action commenced under this title in any district court of the United States in which the court determines that a substantial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition."

Whether the Office of Enforcement of the Economic Regulatory Administration of the Department of Energy, along with the individual defendants, denied plaintiff, its officers, employees and agents, their constitutional rights to due process and protection from self-incrimination by requiring plaintiff to respond to the September 10, 1980, NOPV with a sworn certification that the information contained in the reply is true, complete, and correct prior to the determining whether to refer the matter described in the NOPV to the Department of Justice for criminal prosecution.

In this appellate proceeding, Missouri Terminal Oil has presented its constitutional issue in two alternative arguments. First, it is alleged that the rights of appellant's officers, employees and agents against self-incrimination will be violated if a sworn response to the Notice of Probable Violation is required, prior to a determination by the agency of whether to refer any matter for criminal prosecution. In addition, appellant contends that requiring such response will violate the due process rights of Missouri Terminal since its employee, Riggins, will refuse to certify and sign it as required by agency regulations. Missouri Terminal also contends that its due process rights were violated since the agency treated it in a different manner than it did other firms with similar constitutional claims.

The Department of Energy contends that the question certified by the District Court obscures the real issue in the case because the District Court lacked jurisdiction in the first instance for want of ripeness or because of appellant's failure to exhaust administrative remedies by failing to assert constitutional claims during the agency proceedings.

Before discussing the questions of ripeness and exhaustion of remedies, it is necessary to review in some detail the nature of proceedings and regulations which govern institution of remedial actions before the administrative agency.

A "Notice of Probable Violation" is the manner in which an enforcement proceeding is commenced by the agency. Before final remedial action is taken, the Office of Enforcement must issue a "Proposed Remedial Order," and prove the validity of that order before the Office of Hearings and Appeals (OHA) of the DOE. 10 C.F.R. § 205.192A. The OHA has the power to order corrective action at the conclusion of its hearings and proceedings. 10 C.F.R. § 205.199B. A right of appeal from orders of the OHA is provided, within the agency, to the Federal Energy Regulatory Commission. 10 C.F.R. § 205.199C. "In order to exhaust administrative remedies, a person who is entitled to appeal a Remedial Order issued by the Office of Hearings and Appeals must file a timely appeal and await a decision on the merits. Any Remedial Order that is not appealed within the 30-day period shall become effective as a final Order of the DOE and is not subject to review by any court." 10 C.F.R. § 205.199C(e).

In this instance, of course, we are not dealing with a Proposed Remedial Order, or with any corrective action by the agency. Our case is at the initial stage of the proceedings—the issuance of a Notice of Probable Violation. When this issued, Missouri Terminal Oil had the right to file a reply within thirty days, setting forth its position with regard to the charges put forward by the DOE. The Economic Regulatory Administration may extend this thirty-day period "for good cause shown." 10 C.F.R. § 205.191(b).

If a firm does not file a reply with the agency within the applicable time period, it "shall be deemed to have admitted the accuracy of the factual allegations and legal conclusions stated in the Notice of Probable Violation," and the agency may proceed with a Proposed Remedial Order. 10 C.F.R. § 205.191(f).

If a firm chooses to Reply to a Notice of Probable Violation, then: (10 C.F.R. § 205.-191(c))

> The reply shall be in writing and signed by the person filing it. The reply shall contain a statement of all relevant facts pertaining to the act or transaction that is the subject of the Notice of Probable

Violation. The reply shall include a statement of the legal, business and other reasons for the act or transaction; a description of the act or transaction; and a discussion of the pertinent provisions and relevant facts reflected in any documents submitted with the reply ... In further proceedings regarding this act or transaction, the Office of Hearings and Appeals will decline to consider an issue that was not raised in the reply to the Notice of Probable Violation *unless good cause is shown for the failure to raise the issue.* (Emphasis supplied.)

The Notice of Probable Violation direct to the appellant in this instance (PX 1) advised Missouri Terminal Oil that: (NOPV p. 5)

Each and every allegation set out in Part III of this Notice must be specifically answered. In order to deny any allegation in whole or part, a detailed explanation of the legal and factual basis of the denial must be provided. Thus, a mere denial of the validity of a particular allegation will not be deemed a denial unless accompanied by a positive statement of what is believed to be the proper facts or applicable law. Any allegation not properly denied in accordance with these procedures will be considered to have been admitted.

\* \* \* \* \* \*

The reply must be in writing and accompanied by a sworn certification of the individual filing the reply that the individual is authorized to reply to the Notice and that the information contained in the reply is true, complete, and correct.

The Notice also contained this warning: (PX 1, p. 4)

Some or all of the matters described in this Notice are being evaluated by the Department of Energy to determine whether referral to the Department of Justice for criminal investigation is warranted. Such an investigation may lead to criminal or further civil prosecution of involved companies or individuals.

In this case, appellant was required to file a response to the Notice of Probable Violation by October 24, 1980. On October 1, 1980, it requested a three month extension in order that it might have time to arrange for certain computations which would be necessary for filing a Response. An extension was granted through January 15, 1981. In requesting more time, Missouri Terminal Oil complained of the complexity of computations of unrecovered product costs, and problems incurred in editing keypunch data and scheduling computer time. Appellant did not raise any constitutional objections to the proceeding and did not raise at that time any question of a fear of criminal prosecution. [Administrative Record (hereafter Adm.Rec.) p. 020.]

On January 14, 1981, the day before its response was due, Missouri Terminal filed an Application for Stay, requesting that the obligation of Missouri Terminal to respond to the NOPV be stayed until the agency determined not to refer the matter to the Department of Justice for criminal prosecution or until such time as the OHA decided the issues raised in *J. D. Streett & Co.,* then pending.[2] (Adm.Rec. p. 001, 002.) In its application, Missouri Terminal relied upon its own due process rights, alleging "(i)t is a violation of MoTer's due process rights to require raising all defense (sic) in a civil administrative proceeding to matters which may be the subject of a subsequent criminal proceeding." (Adm.Rec. 002.)

On January 15, 1981, Missouri Terminal filed an Application for Temporary Stay, again raising the issue of its own due process rights, and suggesting that it would sustain irreparable injury unless a stay was

---

**2.** The J. D. Streett & Co., Inc. litigation, Case No. BRS–0090, was one of several cases pending before the Office of Hearings and Appeals which involved, in one way or another Fifth Amendment privileges of corporate officers of firms under investigation by the DOE. An interlocutory order consolidated these cases for

hearing upon certain constitutional claims, and stays were issued pending final disposition of various applications for exemptions or stays of obligations.

The ultimate disposition of these cases is discussed, *infra.*

granted. No mention was made of the self-incrimination right of its employees, and no contention was made regarding the requirement that the Reply to the Notice of Probable Violation be certified.

On January 27, 1981, the OHA denied the applications for stay, finding that appellant had failed to satisfy the criteria for a temporary stay or a stay.[3] Adm.Rec. pp. 095 *et seq.* It was noted that Missouri Terminal had raised the due process issue for the first time in its application, that prior requests for stays had relied on a claim that more time was needed to compile data, and there it would seem "that the immediacy of the alleged harm was generated by the procrastination of counsel rather than by any action of the DOE." Adm.Rec. p. 095.

In responding to appellant's claim that its due process rights would be violated if it failed to respond to the Notice of Probable Violation, the OHA ruled, at p. 096 of Adm. Record:

> If there are circumstances which prevent M.T.O. from responding fully to the NOPV at this time, the OHA has ample discretion to consider these equitable factors in the subsequent Remedial Order proceedings, if any. Consequently, we find that an adequate legal remedy exists to prevent any injury to M.T.O. that may arise from its obligation to respond at this time to the NOPV.

At the time that Missouri Terminal Oil filed its Application for Stay in January, 1981, there were several cases pending before the OHA which, in one way or another, presented claims involving the Fifth Amendment privilege of officers of firms

under investigation by the DOE, and the requirement of certification. Stays of reporting requirements had been granted by the agency, pending additional briefing and argument on constitutional questions, and on December 8, 1980, a consolidated hearing was had, and the stays were continued pending final determination of the issues raised. *In the Matter of The Crude Oil Company; Ernest E. Allerkamp; Summit Transportation Co.; J. D. Streett & Co.; Site Oil Company; Flash Oil Corporation,* Nos. BRZ–0058, 0059, 0060, 0061, 0062. Transcript of Hearing, Joint Exhibit 11.

Decisions were reached in these cases after Missouri Terminal Oil filed this action in the United States District Court. In Site Oil Company, and Flash Petroleum Corp., Cases Nos. BRS–0111, CRT–0111, BRS–0120, the firms filed applications requesting stays of their obligations to respond to Notices of Probable Violations on the ground that requiring answers might violate the Fifth Amendment rights of their employees, and the due process rights of the corporation. By decision filed March 20, 1981 (Joint Exhibit 2) the OHA determined that stays should be denied because the constitutional claims were not yet ripe for adjudication since none of the employees had actually claimed a privilege, no request for criminal prosecution had been made, and no decision had been made to request one. It was noted that the firms could reply to the NOPVs and supply as much information as possible while asserting any constitutional claims that might be applicable. See *Unit-*

---

**3.** 10 C.F.R. § 205.125(b) sets out guidelines for granting stays:

"(b) *Criteria.* The criteria to be considered and weighed by the Office of Hearings and Appeals in determining whether a stay or temporary exception should be granted are:

(1) Whether a showing has been made that an irreparable injury will result in the event that the stay or temporary exception is denied;

(2) Whether a showing has been made that a denial of the stay or temporary exception will result in a more immediate hardship or inequity to the applicant than to the other persons affected by the proceeding;

(3) Whether a showing has been made that it would be desirable for public policy reasons to grant immediate relief pending a decision on the merits of the underlying appeal or exception application;

(4) Whether a showing has been made that it is impossible for the applicant to fulfill the requirements of an outstanding order or regulatory provision; and

(5) Whether a showing has been made that there is a strong likelihood of success on the merits."

*ed States v. Sullivan*, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927).[4]

In *J. D. Streett & Company, Inc.*, Case No. BRS–0090, the company also filed application for stay of its obligation to respond to a Notice of Probable Violation, claiming a possible violation of the Fifth Amendment rights of its employees and the corporation's due process rights. In an opinion filed March 27, 1981 (Joint Exhibit 3) the stay was denied "because there is a procedure available by which (Streett) can raise its constitutional claims without being deemed to have admitted any of the allegations in the NOPV." As in *Site Oil Co.*, it was noted that Streett could raise its constitutional claims in the NOPV proceeding:

> These claims may be interposed in the reply as a matter of right and if they are included there is no risk that it will be deemed to have admitted the NOPV's allegations. In this connection, the ERA concedes that if Street's (sic) reply to the NOPV asserts constitutional defenses, it will not be deemed to have admitted the allegation in those portions of the NOPV to which the defenses relate. The ERA always has the burden of persuasion in a PRO (Proposed Remedial Order) case . . . and although Street may be unable to rebut the ERA's case if it stands on the constitutional privileges of its employees, the assertion of the privilege is a sufficient denial of an allegation of the NOPV to prevent Street from being deemed to have admitted that allegation.

In *Ernest E. Allerkamp*, Case Number BES–0148, BEG–0039, a Proposed Remedial Order was issued to an individual, Allerkamp; he was advised by letter that the DOE was considering whether to refer the matter for criminal prosecution; he then filed motion to extend the time to file his Statement of Objections until a decision

was made whether or not to commence criminal proceedings. On March 27, 1981, the OHA issued its Decision and Order (Joint Ex. 4) concluding that a stay should not issue because Allerkamp's rights could be protected by raising his constitutional claims as defenses during the Proposed Remedial Order proceedings.

In one of the consolidated cases, *The Crude Company*, the OHA, did grant an exception to the requirement that the firm make certain reports to the agency, pending completion of pending criminal proceedings covering the firm's crude oil activities. *The Crude Company*, Case No. BEE–1015, Proposed Decision, March 5, 1981, PX–12. Since the company and its co-defendant president had already been indicted for miscertifying the nature of "old oil," it was determined that the issue of self-incrimination was definite and real:

> In the present case we find the hazard of incrimination to be clear. The question being asked (in the required report) is 'Did you comply with the crude oil certification regulations?' Through indictments of T.C.C. and its former president the government has already opined that the answer to that question is no. Any employee who signed a statement asserting otherwise would clearly risk being named as an additional defendant. To avoid that hazard, each of T.C.C.'s employees and agents is therefore entitled to claim the privilege against self-incrimination.
>
> \*   \*   \*   \*   \*   \*
>
> We have therefore concluded that exception relief should be granted because it would be inequitable to subject the firm to prosecution for failure to file these forms while it is impossible to file.

In this case, Missouri Terminal claims that its due process rights have been violated because it has been treated in a different

---

4. Sullivan was convicted of refusing to file an income tax return reporting illegal income from "rum running." The court of appeals held that the 5th Amendment protected defendant from the requirement that he file a return. In reversing, Mr. Justice Holmes stated:

"In the decision that this was contrary to the Constitution we are of opinion that the protection of the 5th Amendment was pressed too far. If the form of return provided called for answers that defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all." 274 U.S. at 262, 47 S.Ct. at 607, 71 L.Ed. at 1039.

manner than the firm involved in *The Crude Company* litigation, which was granted a stay of reporting requirements. According to appellant, it is just as deserving of an order staying its obligation to respond to the Notice of Probable Violation as was The Crude Company. *The Crude Company* case is clearly distinguishable. In the first instance, the firm raised the issue of its employees' Fifth Amendment rights in its application for exception. As previously noted, Missouri Terminal did not do so in its application for stay.[5] It is also clear that special circumstances existed with respect to the pending criminal prosecution so that the constitutional issue was ripe for decision.

As should be evident from the lengthy foregoing discussion it is clear that Missouri Terminal is premature in presenting its constitutional claim for judicial consideration. This Court recently had occasion to discuss at length the requirement of exhaustion of administrative remedies, and the necessity that a real controversy be "ripe" for judicial review. In *Hawthorne Oil & Gas Corporation v. Department of Energy, et al.*, (Em. App.1981) 647 F.2d 1107, the general rule was stated in this language: 647 F.2d at 1113.

> In the absence of exceptional circumstances, not present in this action, a party may not maintain judicial action to secure relief from a supposed or threatened, injury by administrative action until the available and prescribed administrative remedies have been exhausted. This is the controlling rule of law relied on by the district court, which properly cited in support of its decision the leading cases, *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938) and *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972).

The general exceptions to the exhaustion doctrine were also set out in *Hawthorne*:

(1) The agency cannot supply an adequate remedy;

(2) The agency action will cause irreparable injury;

(3) The agency has acted in excess of its statutory authority; or

(4) Pursuit of an administrative remedy would be futile.

None of the exceptions apply in this case. First, Missouri Terminal has completely failed to give the agency an *opportunity* to supply an adequate remedy, for it failed to raise the Fifth Amendment or certification issue in any manner in its applications for stays. Second, it affirmatively appears that the agency stands ready and willing to supply protection for whatever constitutional rights might arise, as illustrated by the nature of the rulings made in *The Crude Company, Site Oil, Ernest E. Allerkamp*, and *J. D. Streett & Co.*, cases discussed, *supra*. Likewise, there is no evidence that agency action will cause irreparable injury, or that the agency acted in excess of its statutory authority. Finally, appellant has failed to establish that pursuit of its administrative rights would be futile. To the contrary, it is apparent that the OHA recognizes the serious nature of constitutional questions which may arise, and that it stands ready to accommodate those rights, by providing an orderly method for raising such issues during Notice of Probable Violation and Proposed Remedial Order proceedings.

At the request of the Court the DOE has supplied us with copies of the most recent decisions of the DOE which deal with the due process rights which have been raised by Missouri Terminal in this action. In *Barkett Oil Company, et al.*, Case No. BRS–0167, decided July 13, 1981, several firms filed applications for stay of their obligation to reply to NOPV's until such time as the Office of Enforcement would determine not to refer the matters for criminal prose-

---

**5.** In denying a stay to Missouri Terminal the Office of Hearings and Appeals noted, Adm. Rec. p. 096:

> "Finally, although the Interlocutory Order in *The Crude Co.* cases cited by M.T.O. are somewhat similar to this case in that some of the firms involved did raise the due process

issue discussed above, the determination to grant stay relief was also based upon each firm's representation that its employees privilege against self-incrimination would be imperiled. M.T.O. has not raised that issue in this proceeding."

cution. They claimed that a stay was required in order to protect their officers' Fifth Amendment rights and the firms' due process rights. A stay was denied upon the grounds stated in the *J. D. Streett & Co.,* litigation discussed above.

In *Barkett,* the OHA stated:

As we pointed out in that decision (*Streett*) the requirement that a firm to which an NOPV has been issued raise its claims and defenses in its reply to the NOPV does not place the firm and its officers in the position of risking either self-incrimination by the officers or being deemed to have admitted the allegations in the NOPV. The good-faith assertion of a firm's officers' fifth amendment privilege against self-incrimination in the firm's reply to the NOPV will not be deemed an admission of the allegations to which the invocation of the privilege relates.

Since it clearly appears that appellant has failed to exhaust its administrative remedies, and there being no evidence that these remedies would be inadequate or futile, the complaint of Missouri Terminal Oil Company against the Department of Energy, seeking to enjoin further administrative proceedings should be, and has been Dismissed.