**WYOMING REFINING COMPANY,**
Plaintiff,

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR; James G. Watt, Secretary of the Interior; and the United States of America, Defendants.**

No. C81–0376B.

United States District Court,
D. Wyoming.

May 3, 1982.

Stanley K. Hathaway, Hathaway, Speight & Kunz, Cheyenne, Wyo., Sim Lake, of Fulbright & Jaworski, Houston, Tex., for plaintiff.

Francis Leland Pico, Asst. U. S. Atty., D. Wyo., Cheyenne, Wyo., Dina R. Lassow, Atty., Dept. of Justice, Washington, D. C., for defendants.

## ORDER ON MOTION TO DISMISS

BRIMMER, District Judge.

The above-entitled matter having come before the Court on a Motion to Dismiss filed on behalf of the Defendants; the Plaintiff appearing by and through its attorneys Sim Lake, Esq., and Stanley K. Hathaway, Esq., and the Defendants appearing by and through their attorneys Dina R. Lassow and Francis Leland Pico, Esq., Assistant United States Attorney; the Court, having reviewed the pleadings and memoranda filed herein, having heard the arguments of counsel in favor of and in opposition to the Motion, and having taken the matter under advisement, and now, being fully advised in the premises; FINDS:

Wyoming Refining Company brings this action claiming that it is the victim of unlawfully high prices charged by the Department of the Interior (DOI) for crude oil purchased under the Emergency Petroleum Allocation Act of 1973 (EPAA). While the EPAA was in effect, the regulations promulgated thereunder with regard to the pricing of crude oil included DOI. See 10 CFR §§ 212.1(a), 212.31, and 212.52. The Complaint alleges that from June 1980 through January of 1981 the Defendants exacted prices in excess of the regulated level without obtaining the required certification under the regulatory scheme. See 10 CFR §§ 212.73(a) and 212.131(c). The overcharges are contended to have amounted to $2,390,140.41. Thus, Plaintiff bases its claim on the common law action for money wrongfully exacted and retained by the Defendants and § 210(a) of the Economic Stabilization Act of 1970 (ESA), as incorporated by EPAA.

The Defendants have moved to dismiss, arguing that § 210(a) should not be construed as a waiver of sovereign immunity against the federal government, and therefore, this Court is without subject matter jurisdiction. Defendants also contend that the Plaintiff failed to exhaust administrative remedies and may not seek judicial relief until the appropriate administrative remedies are pursued.

WHETHER THE PLAINTIFF MAY ASSERT JURISDICTION AGAINST THE FEDERAL GOVERNMENT UNDER § 210(a) OF THE ESA:

The starting point must be the language of § 210(a):

Any person suffering legal wrong because of any action or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount of controversy, for appropriate relief, including an action for declaratory judgment, writ of injunction (subject to the limitations in Section 211), and/or damages.

Does this general conferral of jurisdiction on the United States District Court amount to a waiver of federal sovereign immunity? The answer will necessarily depend on how the Temporary Emergency Court of Appeals (TECA) has interpreted the statute in

two seminal cases; *Griffin v. United States,* 537 F.2d 1130 (Em.App., 1976), cert. den., 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 286, and *McCulloch Gas Processing Corp. v. Canadian Hidrogas,* 577 F.2d 712 (Em.App., 1978), cert. den., 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126.

*Griffin v. United States,* supra, involved a claim made by royalty owners alleging that the two-tier pricing regulations issued under the EPAA were an unconstitutional taking of their property. Plaintiff in this case properly points out that the court in *Griffin* specifically found that suits based on Fifth Amendment takings could be maintained against the federal government under § 210(a).

> The fact that "private suits" such as those brought by plaintiffs name as defendants, and seek monetary damages against, the United States no more renders them public suits than are claims brought by private individuals who recover damages against the United States, for example, under the Tort Claims Act. The characterization of such suits as something other than private suits contemplated by § 210(a) even though it is assumed they involve legal wrongs arising under the EPAA, and precluding any action against the government pursuant to the latter section seem difficult to justify.
>
> We believe that if or to the extent plaintiff suffered legal wrong because of any taking of their property as a result of the two-tier pricing system, they would have the right to utilize the jurisdiction afforded in the district court by § 211 by bringing the type of action contemplated by § 210(a) for damages, there being no limitation in § 211 to the contrary. 537 F.2d at 1136.

Considering the identity of the parties in *Griffin,* it is unlikely that TECA could have had anything else in mind other than statutory grant of jurisdiction which includes suits brought against the federal government.

*McCulloch Gas Processing Corp. v. Canadian Hidrogas Resources, Ltd.,* supra, involved a claim brought by a propane supplier against its customer, Hidrogas, and the regional administrator of the Federal Energy Administration. The Plaintiff was seeking redress for losses suffered as a result of a FEA order requiring continuing sales to Hidrogas in spite of its poor financial situation. At first glance, the *McCulloch* court appears to have restricted the *Griffin* holding to Fifth Amendment taking cases, while withholding the waiver of sovereign immunity in other contexts. In response to a question certified by the district court regarding waiver outside of Fifth Amendment cases and the availability of damages against the federal government under § 210, Em.App. responded:

> We thus answer the first part of the question certified in the negative. *Griffin* does not hold that section 210 provides a right of damages in suits against the government on a basis other than that of an alleged unconstitutional taking of property for a public purpose without just compensation. Moreover, with regard to the second part of the question before this court, we hold that *Griffin* aside, damages are not available against the government in such suits. 577 F.2d at 716–717.

Plaintiff argues that *McCulloch* should be distinguished in light of the differences in the types of governmental conduct attacked there and in the case at hand. The contention is a difficult one to make in light of the breadth of the above-quoted portion of that opinion. Yet, a close reading of the case would indicate that the argument does have merit. The *McCulloch* court was obviously hesitant to infer from § 210 an intent on the part of Congress to make federal agencies susceptible to damage awards for functioning in their regulatory capacity, as indicated by the following passage:

> Nor can we lightly assume that Congress would have provided a cause of action for damages against the government in the circumstances of this case. To expose the FEA to damage actions based on its regulations and orders would constitute a highly unusual choice by Congress, and

we will not impute such a decision to the legislature when plaintiff can offer no evidence, apart from an ambiguous statute, in support of its position. 577 F.2d at 717.

Footnote 12, placed at the end of this paragraph, is also representative of the appellate court's concern regarding liability for administrative acts.

It is well established that, in the absence of any statutory foundation, improper regulatory action will not provide the basis for a damage action against the government unless the regulation amounts to a taking. (Citations omitted.)

Plaintiff properly points out that the dangers of implying a waiver of sovereign immunity addressed in *McCulloch* are not present here. In the case at hand, the conduct giving rise to the cause of action and the legal theory on which recovery is based are identical to that which was envisioned by the authors of the enforcement mechanism designed to give effect to the ESA. The federal government was explicitly included within that apparatus by 10 CFR §§ 212.31 and 212.52. To exempt one of the largest sellers of crude oil from the pricing mechanism by precluding purchasers from pursuing their statutory remedies for overcharges would be incongruent with that regulatory scheme.

WHETHER THIS COURT CAN MAINTAIN JURISDICTION OVER THE PLAINTIFF'S CLAIM FOR MONEY WRONGFULLY EXACTED AND RETAINED:

■ Defendants argue that, to the extent the Plaintiff can assert a common law claim for money wrongfully exacted, jurisdiction must still be established under § 210 of the ESA. If sovereign immunity was not waived in § 210, they contend that the common law claim would also not be cognizable against the federal government. Assuming that a statutory claim is not available to the Plaintiff on these facts, however, there is nothing to indicate that Congress intended to deprive the Plaintiff of this common law right of action under the ESA. Absent express statutory language or clear congressional intent, it is generally held that a statute should not be interpreted in derogation of the common law. See *United States v. Mead,* 426 F.2d 118 (9th Cir., 1970); *Bauers v. Heisel,* 361 F.2d 581 (3rd Cir., 1966), cert. den., 386 U.S. 1021, 87 S.Ct. 1375, 18 L.Ed.2d 457. A statutory remedy will not be considered exclusive, and common law rights and remedies survive unless Congress intended the legislative provision to be exclusive. *Continental Management, Inc. v. United States,* 527 F.2d 613 (Ct.Cl. 1975).

Even if the wrongful exaction claim were dependent on § 210 of the ESA for jurisdiction, the Supreme Court has carved an exception in the sovereign immunity monolith for such suits, as stated in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976):

Where the United States is the defendant *and the plaintiff is not suing for money improperly exacted or retained,* the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis "in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. (Emphasis added. 424 U.S. at 401–402, 96 S.Ct. at 954–955.)

It is significant that this passage is quoted entirely in *McCulloch Gas Processing v. Canadian Hidrogas,* supra, at 717. Furthermore, the fact that jurisdiction has been instilled in the district courts by §§ 210 and 211(a) of the ESA is sufficient to overcome any limitation placed on concurrent jurisdiction with the Court of Claims under 28 U.S.C. § 1346. See *The Poole & Kent Co. v. United States,* 214 Ct.Cl. 836 (1977); *Metsch v. United States,* 493 F.2d 1232 (Ct. Cl.1974); *Buck Kreihs Co. v. United States,* 427 F.2d 770 (Ct.Cl.1970); *Alloy Products Corp. v. United States,* 302 F.2d 528 (Ct.Cl. 1962).

WHETHER THIS SUIT MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES:

■ Plaintiff is correct in pointing out that the judicial remedies established under

the ESA were not intended to be held in abeyance until the litigant's course through the labrynth of administrative remedies eventually reaches a dead end. See *Bulzan v. Atlantic Richfield Co.,* 620 F.2d 278 (Em. App., 1980); *Boehm v. Gulf Oil Co.,* 496 F.Supp. 1060 (E.D.Pa., 1980); *U. S. Oil Co. v. Koch Refining Co.,* 497 F.Supp. 1125 (E.D.Wis., 1980).

The cases cited by the Defendant for purposes of showing TECA's insistence on the exhaustion of administrative remedies are not on point. *Hawthorne Oil & Gas Corp. v. Dept. of Energy,* 647 F.2d 1107 (Em.App., 1981), and *Missouri Terminal Oil Co. v. Edwards,* 659 F.2d 139 (Em.App., 1981), involved attempts to enjoin the issuance of notices of probable violation by the Department of Energy. Enforcement actions instituted by the Department of Energy in its regulatory capacity are a far cry from sales of crude oil by the Department of the Interior. All things considered, it would appear that the judicial precedent presented by the Plaintiff is to control on this issue.

It is also significant that the reply made by the DOI to the Plaintiff's request for a refund of alleged overcharges, dated August 18, 1981, referred to a memorandum issued by the Chief of the Conservation Division advocating noncompliance with the FEA's certification regulations. Thus, any attempts by the Plaintiff to pursue its claims would not only encounter the standard administrative delays, but would likely be an exercise in futility. The law does not require an injured party to take such needless steps under these circumstances. See *Aleknagik Natives Limited v. Andrus,* 648 F.2d 496 (9th Cir., 1980); *Bradley v. Laird,* 449 F.2d 898 (10th Cir., 1971). Furthermore, absent a statutory directive requiring exhaustion of administrative remedies, and none exists here, application of the doctrine is within the discretion of the courts. *Eluska v. Andrus,* 587 F.2d 996 (9th Cir., 1978); *Montgomery v. Rumsfeld,* 572 F.2d 250 (9th Cir., 1978). As the record now stands, dismissal for purposes of pursuing administrative remedies would be fruitless and serve only to unnecessarily delay the final disposi-

tion of this case in accordance with the regulatory scheme devised under the ESA.

Finally, contractual provisions requiring the exhaustion of administrative remedies in the agreement governing the sales involved in this suit will not carry the day for the Defendants. Not only is the contract specifically subjected to the emergency legislation under which the certification guidelines were promulgated, but courts have consistently held that such contractual obligations are subordinate to the Emergency Petroleum Allocation Act and the Economic Stabilization Act. See *Atlantic Richfield Co. v. DOE,* 655 F.2d 227 (Em.App., 1981); *Trans World Airlines, Inc. v. FEO,* 380 F.Supp. 560 (D.D.C.1974), aff'd sub nom. *Air Traffic Ass'n v. FEO,* 520 F.2d 1339 (Em.App., 1975). Nor is the 90 day limitation period of 30 U.S.C. § 226–2 related in any way to this action.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion to Dismiss filed on behalf of the Defendants shall be, and the same hereby is, denied.