**DEPARTMENT OF ENERGY and Donald Paul Hodel, Secretary of Energy, Defendants-Appellants,**

v.

**Ray L. HUNT, Independent Executor of the Estate of H.L. Hunt, Plaintiff-Appellee,**

**The States of Arkansas, Connecticut, Delaware, Hawaii, Indiana, Iowa, Kansas, Louisiana, Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, Virginia, West Virginia, Wisconsin, and Wyoming, Puerto Rico, the Territory of Guam and the Virgin Islands, Intervenors-Appellants,**

**Cities Service Company, Intervenor-Appellee.**

**Nos. 5–101, 5–102.**

Temporary Emergency Court of Appeals.

April 24, 1984.

As Corrected May 14 and Aug. 10, 1984.

Before BECKER, DAUGHERTY and THORNBERRY, Judges.

INTERLOCUTORY FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDERS DENYING WITHOUT PREJUDICE JOINT MOTIONS TO REMAND AND DIRECTING FILING OF RECORD ON APPEAL AND BRIEFS OF APPELLANTS AND INTERVENORS–APPELLANTS

WILLIAM H. BECKER, Judge.

## FACTS

The defendants-appellants, the Department of Energy (DOE) and the Secretary of Energy (Secretary), in No. 5–102, and the intervenors-appellants, the States of Arkansas, *et alii* (States) in No. 5–101, filed separate appeals to this Court from a judgment and orders of the United States District Court for the Northern District of Texas, Dallas Division in a civil action designated by appellants District Court No. CA–3–78–1487–W. (Because no Record on Appeal has been filed the records of this Court do not contain a copy of the judgment and orders of the District Court or transcript of any proceedings therein.) These two separate appeals, numbered 5–101 and 5–102 on the docket of this Court are considered jointly.

The Notice of Appeal of the States in No. 5–101, filed in this Court on October 14, 1983 (with caption and signatures omitted) is as follows:

The above-listed jurisdictions [sic] ("the States"), intervenors in the proceeding below, hereby give notice of their appeal to this Court from a final judgment of the United States District Court for the Northern District of Texas, entered on July 20, 1983 by Chief Judge Halbert O. Woodward (filed on July 25, 1983), and from an Order entered by Chief Judge Woodward on September 13, 1983 (filed September 14, 1983) denying the motion of certain States for reconsideration and clarification of the aforesaid final judgment.

The States appeal only from those portions of the District Court's Judgment which (1) lifted in all respects the District Court's injunction, entered on June 4, 1979 and filed on June 6, 1979, with regard to plaintiff Ray L. Hunt, Independent Executor of the Estate of H.L. Hunt ("Hunt"); (2) authorized the escrow agent for Hunt to pay out funds contained in the Hunt escrow account in accordance with the Department of Energy's ("DOE's") Remedial Order in *In re Estate of H.L. Hunt,* Case No. 6A0C00027 (November 10, 1977); and (3) denied the relief prayed for by the States, namely the distribution of the funds in the Hunt escrow account to the

States for use in energy-related projects for the benefit of their citizens or, in the alternative, a referral of the remedy issue to DOE's Office of Hearing and Appeals for a proceeding under Subpart V of DOE's regulations, 10 CFR §§ 205.-280–205.288. The States also appeal from that part of the District Court's Order denying their motion for reconsideration.

The Notice of Appeal of the DOE and Secretary in No. 5–102, filed in this Court on October 14, 1983 (with caption and signatures omitted) is as follows:

Notice is hereby given that defendants Department of Energy and Donald Paul Hodel, Secretary of Energy, appeal to the Temporary Emergency Court of Appeals from a final judgment entered on July 25, 1983 by Honorable Halbert O. Woodward, the Chief Judge of the United States District Court for the Northern District of Texas. The defendants moved for reconsideration of that order on August 4, 1983, pursuant to Federal Rules of Civil Procedure 52, 59 and 60. The district court denied that motion on September 14, 1983.

The focus of this appeal is whether the district court erred in denying defendants' motion to remand to the Department for re-examination in light of decontrol of petroleum prices that part of the remedial order directing refund of the overcharges to the first purchaser-refiner, Cities Service Company.

In No. 5–101 the States as appellants filed a statement required by Rule 15(c) of this Court, to accompany their Notice of Appeal which (omitting caption, introductory paragraphs, signatures and list of counsel) was as follows:

2. This appeal is brought pursuant to Section 211(b)(2) of the Economic Stabilization Act of 1970, as amended ("ESA"), 12 U.S.C. § 1904 note, as incorporated by reference in Section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, as amended ("EPAA"), 15 U.S.C. § 754(a)(1).

More specifically, the States appeal only from those portions of the final judgment entered on July 20, 1983 by Chief Judge Halbert O. Woodward (filed on July 25, 1983) which (1) lifted in all respects the District Court's injunction, entered on June 4, 1979 and filed on June 6, 1979, with regard to plaintiff Ray L. Hunt, Independent Executor of the Estate of H.L. Hunt ("Hunt"); (2) authorized the escrow agent for Hunt to pay out funds contained in the Hunt escrow account in accordance with the Department of Energy's ("DOE's") Remedial Order in *In re Estate of H.L. Hunt,* Case No. 6A0C00027 (November 10, 1977); and (3) denied the relief prayed for by the States, namely the distribution of the funds in the Hunt escrow account to the States for use in energy-related projects for the benefit of their citizens or, in the alternative, a referral of the remedy issue to DOE's Office of Hearing and Appeals for a proceeding under Subpart V of DOE's regulations, 10 CFR §§ 205.-280–205.288. The States also appeal from that portion of the District Court's September 14, 1983 Order denying their motion for reconsideration of the aforesaid final judgment.

In general, the issues raised by this appeal are whether the District Court erred in holding in its Memorandum Opinion and Order, entered on July 20, 1983 and filed July 25, 1983, that (1) the Court has no authority, in a suit brought under Section 211 of the ESA, to do anything other than enforce the terms of the Remedial Order DOE issued to Hunt in November 1977; and (2) the decontrol of crude oil in January 1981 does not constitute a significant change in circumstances surrounding the issuance of the 1977 Remedial Order so as to warrant a remand to DOE for reconsideration of the remedy originally specified in such Order. This appeal also raises the issue of whether the District Court improperly denied the States' motion for reconsideration of said holdings.

3. To the States' knowledge, no party is proceeding *in forma pauperis* or *pro se.*

4. On August 19, 1983, the States filed a Notice of Appeal with this Court (No. 5–98) concerning the District Court's final judgment of July 25, 1983. By Order entered October 4, 1983, this Court dismissed that appeal without prejudice. To the States' knowledge, no appeal has been taken in this case to any other court of appeals.

5. The 171-page transcript of the June 21, 1983 oral argument in the District Court will be included in the appendix to the States' brief. The court reporter was Roger W. Miller, C200 U.S. Courthouse, Lubbock, Texas 79401.

In No. 5–102 the DOE and Secretary as appellants filed a statement, required by Rule 15(c) of this Court to accompany their Notice of Appeal, which (omitting caption, introductory paragraphs, signatures and lists of counsel) was as follows:

2. Plaintiff Ray L. Hunt, Independent Executor of the Estate of H.L. Hunt (Hunt), brought, pursuant to the Emergency Petroleum Allocation Act, this action challenging a remedial order issued by the defendant DOE on November 11, 1977. The challenged order found that Hunt had miscertified crude oil produced from its Upper Bearhead Unit as stripper well oil and required Hunt to refund the overcharges with interest to Cities Service Company, the first purchaser of the oil. The district court issued a preliminary injunction restraining the DOE from enforcing the challenged remedial order and requiring Hunt to place the disputed overcharges in an interest-bearing escrow account.

On June 25, 1983, the district court entered a final judgment finding Hunt liable for the overcharges but denying the defendants' motion to remand to the DOE the refund portion of the remedial order to determine whether the refund provision should be modified in light of decontrol of petroleum price. The focus of the appeal is whether the district erred in denying the defendants' motion to remand.

3. Counsel for defendants is not aware of any party proceeding *In Form Pauperis* [sic] or *Pro Se.*

4. The defendants have not appealed this case to any other court. Counsel for defendants is not aware of any appeal by another party to any other court.

5. The 171 page transcript of the hearing on the remedy issue will included [sic] in the record. The court reporter was Roger Miller, C 200 U.S. Courthouse, Lubbock, Texas 79401.

The appellants by unopposed motions, secured successive extensions of time for filing briefs and the record on appeal. The last extension of time to February 17, 1984 for filing the record on appeal and briefs of appellants was granted by the Clerk of this Court on the unopposed Joint Motion of All Parties for Extension of Time. This joint motion for extension of time stated:

Plaintiff and defendants as well as the intervenors Cities [Service Company] and the States have reached settlements which will avoid the necessity of an appeal, but the additional time is required to permit the parties to finalize the language of the settlement agreements. (Words in brackets added.)

On February 15, 1984 a "Joint Motion to Remand" was filed in No. 5–102 which (caption and signatures omitted) was as follows:

Pursuant to Rules 29(c) and 33 of the General Rules of this Court, defendants-appellants Department of Energy and Donald Paul Hodel, Secretary of Energy, ("DOE") and plaintiff-appellee Ray L. Hunt, Independent Executor of the Estate of H.L. Hunt ("Hunt"), hereby move that the case be remanded to the United States District Court for the Northern District of Texas. This motion is made in accordance with the settlement entered into by these parties. The purpose of the remand is to permit the DOE and Hunt to present to the district court a joint motion to vacate section II of its July 20, 1983 opinion and paragraphs 4

through 8 of its September 14, 1983 order dealing with the disposition of the overcharges by the Estate of H.L. Hunt. A copy of the proposed motion is attached hereto as Exhibit 1. Attached as Exhibit A to that proposed motion is a copy of the settlement agreement between DOE and Hunt.

Counsel for the intervenor States and the intervenor Cities Service Company have authorized counsel for Hunt and DOE to represent that they do not oppose the granting of this motion.

This "Joint Motion to Remand" in No. 5–102 was filed on behalf of the DOE, the Secretary and Ray L. Hunt, independent executor of the Estate of H.L. Hunt (Estate). Neither this motion nor any of the attached papers (Exhibit 1 or Exhibit A described hereinafter) was signed by the Secretary or by any authorized person in his behalf, but by lawyers in the Office of General Counsel for the DOE. Attached to this "Joint Motion to Remand" in No. 5–102 was an incomplete draft of "Joint Motion to Modify Opinion and Order" (Exhibit 1) bearing the style and District Court Civil Action No. CA–3–78–1487–W (N.D.Tex.) in which the movants were listed as the Estate of H.L. Hunt, the DOE and the Secretary, all by counsel.

*Document Entitled "Settlement Agreement" Filed in No. 5–102.* Also attached to the "Joint Motion to Remand" was a separate and different document entitled "Settlement Agreement" (Exhibit A) between the Estate of H.L. Hunt, the DOE and the Secretary, signed only by counsel, and purporting to compromise "all claims of the DOE against Hunt with respect to Hunt's overcharges resulting from Hunt's miscertification of crude oil produced from its Upper Bearhead Creek Unit as stripper in 1974." This separate document entitled "Settlement Agreement" was not signed by the Secretary, or an authorized person in his behalf, or by anyone except counsel for the Estate and a member of the Office of General Counsel for the DOE. The purported "Settlement Agreement" filed in No. 5–102 (caption and signatures omitted) was as follows:

Plaintiff Ray L. Hunt, independent executor of the Estate of H.L. Hunt ("Hunt"), and defendants Department of Energy and Donald Paul Hodel, Secretary of Energy (herein collectively refered [sic] to as the "DOE"), agree to settle this action as follows:

1. In the appeal taken by DOE, TECA No. 5–102, Hunt and DOE shall file a Joint Motion to Remand in form and substance identical to the draft motion attached here as Exhibit A.

2. If the foregoing Joint Motion to Remand is granted, Hunt and DOE shall file in the district court in this action a Joint Motion to Modify Opinion and Order in form and Substance identical to the draft motion attached hereto as Exhibit B.

3. This settlement agreement shall be effective only upon execution by the intevenor [sic] states, Cities Service Company and Hunt of the separate settlement agreement. However, if either the Joint Motion to Remand or the Joint Motion to Modify Judgment referred to in separate settlement agreement by Cities Service, States and Hunt is denied, this settlement agreement may be rendered null and void at the option of either party by written notification to the other party within ten (10) days of such denial. Upon fulfillment by DOE and Hunt of all terms of this settlement agreement, and regardless of whether the Joint Motion of DOE and Hunt to Modify Opinion and Order is granted or denied, the DOE shall withdraw its notice of appeal in this action and shall not take any further appeal or otherwise seek further review or modification of the district court's judgment in this case.

4. This settlement agreement is executed as a compromise and satisfaction of all claims of the DOE against Hunt with respect to Hunt's overcharges resulting from Hunt's miscertification of crude oil produced from its Upper Bearhead Creek Unit as stripper in 1974.

Despite this unusual document, the DOE and the Secretary stated in the "Joint Motion to Remand" filed in No. 5–101 on the next day that they were not parties to the "Settlement Agreement" in No. 5–101 between the States, the Estate and Cities Service Company (Cities Service). See emphasized quoted portions of "Joint Motion to Remand," "Joint Motion to Modify Judgment" and "Settlement Agreement," *infra.*

On February 16, 1984 there was filed in this Court in No. 5–101 a separate "Joint Motion to Remand" to the District Court by movants appellants States, appellee Estate and appellee Cities Service. (The DOE and the Secretary did not join in this motion.) This "Joint Motion to Remand" (caption and signatures omitted) was as follows:

Pursuant to Rules 29(c) and 33 of the General Rules of this Court, appellants the State of Arkansas *et al.* ("the appellant States") and appellees Ray L. Hunt, independent executor of the Estate of H.L. Hunt ("the Estate"), and Cities Service Company ("Cities Service") hereby move that the case be remanded to the United States District Court for the Northern District of Texas.

The purpose of the remand is to permit the appellant States, the Estate, and Cities Service to present to the district court a joint motion to modify judgment pursuant to Rule 60(b), Fed.R.Civ.P. A copy of the proposed motion is attached hereto as Exhibit 1. Attached as Exhibit A to that proposed motion is a copy of the Settlement Agreement between the appellant States, the Estate, and Cities Service.

*Defendants Department of Energy and Donald Paul Hodel, Secretary of Energy, are not parties to the Settlement Agreement. However, the defendants have reviewed the Settlement Agreement and have authorized the undersigned to represent to the Court that they do not object to this motion or to effectuation of the Settlement Agreement as a means of terminating this litigation.* (Emphasis added.)

Attached to this "Joint Motion to Remand" in No. 5–101 was a draft of an incomplete unsigned "Joint Motion to Modify Judgment" (Exhibit I) bearing the style and number of District Court Civil Action No. CA–3–78–1487–W (N.D.Tex.) apparently to be completed, signed by counsel only and filed therein. (The DOE and the Secretary were not listed as movants in this draft motion.) This "Joint Motion to Modify Judgment" (caption and blank lines for signature of counsel omitted) was as follows:

Plaintiff Ray L. Hunt, independent executor of the Estate of H.L. Hunt ("the Estate"), intervenor Cities Service Company ("Cities Service"), and intervenors the States of Arkansas, Connecticut, Delaware, Hawaii, Indiana, Iowa, Kansas, Louisiana, Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, Virginia, West Virginia, Wisconsin, and Wyoming, the Commonwealth of Puerto Rico, and the Territories of Guam and the Virgin Islands (collectively "the intervenor States") have agreed to a full and complete settlement of their conflicting claims to the funds held in escrow in this case by InterFirst Bank of Dallas, Texas, as escrow agent for the Estate. A copy of the Settlement Agreement between the Estate, Cities Service, and the intervenor States is attached hereto as Exhibit A.

*Defendants Department of Energy and Donald Paul Hodel, Secretary of Energy, are not parties to the Settlement Agreement.* The defendants have reviewed the Settlement Agreement, however, and they have authorized the undersigned counsel to represent that they do not object to this motion or to effectuation of the Settlement Agreement as a means of finally terminating this litigation. (Emphasis added.)

Pursuant to the Settlement Agreement, the Estate, Cities Service, and the intervenor States filed a motion in the Temporary Emergency Court of Appeals ("TECA") requesting that the case be

remanded to this Court for presentation of this motion. TECA granted that motion on _____, 1983.

The Estate, Cities Service, and the intervenor States hereby move the Court pursuant to Rule 60(b), Fed.R.Civ.P., to modify paragraph (3) of its Judgment of July 20, 1983, to provide as follows:

(3) the escrow agent for Ray L. Hunt, Independent Executor of the Estate of H.L. Hunt, InterFirst Bank of Dallas, Texas, is hereby directed

(a) *to pay out eighty percent (80%) of the funds contained in the Hunt escrow account established pursuant to this court's order of June 4, 1979, to intervenor Cities Service Company, and*

(b) *to pay out twenty percent (20%) of the funds contained in said escrow account to the Attorneys General of the intervenor States* (or their designees or counterparts) and to the Attorneys General of all other States, the District of Columbia, and the territories and possessions of the United States (or their designees or counterparts) in the same proportions utilized by the Secretary of Energy for the disbursement of funds in implementing Section 155(d) of the Further Continuing Appropriations Act, 1983, Pub.L. No. 97–377, 96 Stat. 1830, 1919 (1982), *see* 48 Fed.Reg. 5293 (Feb. 4, 1983), as set forth in Appendix A to this Order. (Emphasis added.)

No "Appendix A to this Order" was filed.

*Document Entitled "Settlement Agreement" Filed in No. 5–101.* Also attached to this "Joint Motion to Remand" filed February 16, 1984 in No. 5–101 was Exhibit A, entitled "Settlement Agreement" of February 14, 1984 which was signed only by attorneys for the appellee Estate, appellee Cities Service and appellants States, as parties. (These were the only parties named therein.) This "Settlement Agreement" filed in No. 5–101 was headed with the style and District Court Civil Action No. CA–3–78–1487–W (N.D.Tex.). It was (caption and signatures omitted) as follows:

This agreement is made on this 14th day of February, 1984, by and between plaintiff Ray L. Hunt, independent executor of the Estate of H.L. Hunt ("the Estate"), intervenor Cities Service Company ("Cities Service"), and intervenors the States of Arkansas, Connecticut, Delaware, Hawaii, Indiana, Iowa, Kansas, Louisiana, Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, Virginia, West Virginia, Wisconsin and Wyoming, the Commonwealth of Puerto Rico, and the Territories of Guam and the Virgin Islands (collectively "the intervenor States").

Whereas the Estate, Cities Service, and the intervenor States wish to settle fully, in the manner set forth herein, all disputes and controversies between them relating to the acts which form the basis of the above-captioned action, they hereby agree as follows:

1. In the appeal taken by the intervenor States, TECA No. 5–101, the Estate, Cities Service, and the intervenor States shall file a Joint Motion to Remand in form and substance identical to the draft motion attached hereto as Exhibit A.

2. If the foregoing Joint Motion to Remand is granted, the Estate, Cities Service, and the intervenor States shall file in the district court in the above-captioned action a Joint Motion to Modify Judgment in form and substance identical to the draft motion attached hereto as Exhibit B.

3. This Settlement Agreement is executed as a compromise in settlement and satisfaction of all claims of Cities Service and the intervenor States both against the Estate and as between one another with respect to the Estate's overcharges during 1974 on properties involved in this litigation; Cities Service and the intervenor States waive and renounce all other claims and causes of action against the Estate or one another based upon or arising out of such overcharges. *Neither the Estate, Cities Service, nor the*

*intervenor States will assert either the existence or the content of this Settlement Agreement as evidence of or authority for any factual or legal proposition in any other proceeding (other than to enforce the Settlement Agreement), including particularly propositions respecting (a) either the presence or absence of actual injury to either Cities Service or the intervenor States collectively or individually, (b) the existence or nonexistence of any right to receive restitution pursuant to section 209 of the Economic Stabilization Act of 1970 ("ESA"), as amended, 12 U.S.C. § 1904 note, in the absence of such injury, or (c) any person's right to receive restitution in any other action pursuant to the ESA.* (Emphasis added.)

4. *If the Joint Motion to Modify Judgment is granted, the intervenor States shall withdraw their notice of appeal in this action and shall not take any further appeal or otherwise seek further review or modification of the district court's Judgment.* (Emphasis added.)

5. If either the Joint Motion to Remand or the Joint Motion to Modify Judgment is denied, this Settlement Agreement shall be null and void.

6. Each party is executing this Settlement Agreement solely in reliance on its own knowledge, belief, and judgment and not based upon any representations not included in this Agreement made by any of the other parties or anyone acting on behalf of any such parties.

7. This Settlement Agreement will be binding upon and inure to the benefit of the parties hereto and their respective representatives, successors, transferees, and assigns.

The DOE and the Secretary were not included as parties to the "Settlement Agreement" (Exhibit A) filed in No. 5–101 and it did not purport to release the claim of the DOE or the Secretary on behalf of either or on behalf of others. The financial terms of the purported "Settlement Agreement" in No. 5–101 were not stated therein, but there was a reference to the unsigned, incomplete draft "Motion to Modify Judgment" (Exhibit 1, *supra*) filed in No. 5–101.

### Relevant Legal and Factual Developments Judicially Noticed

No part has undertaken to furnish records or evidence of current legal and factual developments relevant to determination of the propriety of the motions to remand. Nevertheless our limited research has fortuitously revealed the following relevant developments that must be considered:

1. In other civil actions, the District Court for the Northern District of Texas, pursuant to § 211(c) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, has certified to this Court the constitutional question whether the Emergency Petroleum Allocation Act of 1970 (EPAA) and the Energy Policy and Conservation Act of 1975 (EPCA), are unconstitutional under the ruling of *Immigration & Naturalization Service v. Chadha*, 462 U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), in that those acts contain unconstitutional one-house legislative vetoes that are not severable from the remainder of those statutes. See *Dorchester Gas Producing Company, et al. v. United States Department of Energy, et al.* (TECA No. 5–103) in which this certified question has been referred to a Panel of the Temporary Emergency Court of Appeals of the United States (TECA) for early determination. Thereafter substantially the same constitutional question was certified to TECA by the District Court for the District of Kansas, and the certified constitutional question consolidated with TECA No. 5–103 for early hearing, *In Re: The Department of Energy Stripper Well Exemption Litigation*, M.D.L. No. 378 (TECA No. 10–51). Also, the constitutional question may be under consideration in other appeals. These certified questions should be decided authoritatively before any further judicial action under the challenged EPAA and EPCA, or either of them

can be confidently taken in pending actions and appeals.

2. On February 7, 1984 the Comptroller General rendered a decision that the DOE exceeded its statutory authority to collect and dispose of funds obtained in consent order settlements of alleged violations of petroleum price and allocation regulations by depositing funds in the Treasury as miscellaneous receipts *without prior efforts at restitution* to overcharged purchasers. 63 Comp.Gen. 189 (Decision of February 7, 1984). The soundness and effect of this decision on the two documents entitled "Settlement Agreement" filed with the joint motions to remand in this case are not presented or discussed by the parties in this appeal.

3. On March 12, 1984 in related litigation, *In Re: The Department of Energy Stripper Well Exemption Litigation,* M.D.L. No. 378 (D.Kan.), the DOE filed an interim Report of the Office of Hearings and Appeals of the DOE, which may affect the propriety of the documents entitled "Settlement Agreement" mentioned above. That interim report is as follows (caption, date and signatures omitted):

On September 13, 1983, the United States District Court for the District of Kansas issued an order referring the remedy stage of The Department of Energy Stripper Well Exemption Litigation, No. MDL–378 (D.Kan.), to the Office of Hearings and Appeals (OHA) of the Department of Energy. The court's order directs OHA to conduct fact-finding pursuant to its regulatory process to try to determine who bore the impact of the overcharges found to have occurred in the litigation and in what amounts. The referral order requires the OHA to file this interim report with the court on or prior to March 13, 1984, describing the extent of its progress in the fact-finding process.

On December 12, 1983, the OHA issued a notice of "Implementation of Special Refund Procedures and Solicitation of Comments" pursuant to the court's referral order. The notice was served by mail on all parties to the stripper well litigation and was published in the *Federal Register* on December 30, 1983. 48 Fed.Reg. 57068 (1983). A copy is attached to this report for the convenience of the court. In order to accomplish the fact-finding mission referred by the court, attention was directed to specific matters for comment. The notice stated the OHA's belief that the fact-finding process could best be undertaken by dividing the proceeding into three parts based upon the different levels in the chain of distribution for petroleum products during the period concerned: (i) refiners, (ii) resellers (wholesale & retail), and (iii) consumers. With respect to each level, the OHA outlined possible areas of inquiry. For example, based upon comments filed in previous proceedings, the OHA set forth four possible theories that could form the basis for further factual inquiries concerning whether and how much refiners, who are at the first level of distribution, may have been injured by the overcharges involved. We solicited comments regarding the appropriateness of each of those theories to the fact-finding process, as well as comments expressing other possible ways of analyzing the issues involved. The notice also questioned whether a fact-finding process was even worthwhile in light of the stated complexity of the task, and asked commenters to address this fundamental issue.

Comments to the December 12 notice were to be postmarked no later than February 28, 1984. In response to the notice the OHA has received 96 comments. Although we are continuing to analyze those submissions, a number of initial observations can be made. *Most commenters state that a fact-finding process is both important and worthwhile. The commenters who do not support this process are representatives of state governments who insist that it is impossible to trace with precision the impact of crude oil overcharges. They suggest we make that finding now and so advise the court, along with our*

*views as to an appropriate mechanism for distributing the entire amount of the overcharges to the states, who they suggest are the logical recipients.* (Emphasis added.)

*A number of other commenters maintain that while it may be impossible to trace with precision the impact of the overcharges on a system-wide basis, tracing is not impossible with respect to their particular circumstances.* For example, a utility which was a participant in the Crude Oil Entitlements Program maintains in its comments that it should receive a share of the overcharges in proportion to its participation in that program. The utility states that it was effectively an end-user of the crude oil involved as a result of its operation of a synthetic natural gas plant. *The utility states that it passed through the impact of the overcharges, as routed through the Entitlements Program, in the rates which it charged its natural gas customers, and that any refund it receives similarly will be passed through in the rates it charges for natural gas. Other firms have made similar arguments that they should be treated as end-users. Under these circumstances, since the court has mandated that we fully explore all possible avenues, we are not prepared to report without further investigation that it is impossible to trace with precision the impact of at least some of the overcharges found to have occurred in this litigation.* (Emphasis added.)

In addition to raising the "impossibility" issue, the comments raise another underlying fundamental question that requires further exploration, namely, what is the appropriate degree of precision that should be required in determining the impact of the overcharges on individuals or groups of potential claimants. A number of comments argue that under the order of the court, the OHA fact-finding process must develop precise information as to the impact of overcharges to any given individual or entity in order to recommend, and for the

court to conclude, that a given individual or entity was really injured by the overcharges. Other commenters maintain that appropriate fact-finding may be done on a less exacting basis, where the decisionmaker has an adequate degree of confidence that the result reached through that process is correct. This question is extremely important in a complex situation where impacts were nationwide and occurred some time in the past. Yet to be determined is how confident one can be that the determinations regarding who bore the impact of the overcharges involved in this proceeding can be correct. The issue of what degree of confidence is appropriate will be the focus of rigorous analysis during the fact-finding process.

Most commenters urge that the most appropriate way to proceed with the process is to develop the relevant facts within the framework the OHA proposed on December 12, 1983, and to examine the impact of crude oil overcharges at each level in the chain of distribution for petroleum products. In view of the court's request that a full record be developed, utilizing suggestions on procedures contained in the comments filed, we intend to convene in the near future a series of hearings for the purpose of receiving evidence from all parties. The first hearings will focus on the impact of the overcharges through the refiner level of distribution. If they appear to be fruitful, subsequent hearings in the series may focus on the other levels of distribution, *viz.*, product resellers and consumers of petroleum products.

The foregoing discussion constitutes our interim report to the court concerning the progress made by the OHA in the fact-finding mission.

4. On December 21, 1982 Congress enacted Public Law No. 97–377 which contained § 155 giving the Secretary of Energy authority to disburse designated petroleum violation escrow funds "... for limited restitutional purposes (1) which are rea-

sonably expected to benefit the class of persons injured by such violations, and (2) which ... are likely not to be ... otherwise refunded to injured persons because the purchasers of the refined petroleum products cannot be reasonably identified or paid or because the amount of each purchaser's overcharge is too small to be capable of reasonable determination." Section 155(a). See discussion of this § 155 in *United States v. Exxon Corporation*, (D.D.C.1983) 561 F.Supp. 816 at 866. None of the parties have presented to this Court any views concerning the effect of this § 155 on the propriety of the two documents entitled "Settlement Agreement" filed in this case.

## CONCLUSIONS OF LAW

■ 1. In the absence of an adequate Record on Appeal, including the essential record of the proceedings below, we are unable to determine whether we have jurisdiction of the appeals described above.

■ 2. We have a primary duty to determine the existence of jurisdiction of the appeals herein, even if the question is not raised by the parties. Wright, *Law of Federal Courts* (4th Ed.1983) § 7, page 23.

3. If jurisdiction of the appeals exists, we have a duty to determine the propriety of granting the joint motions to remand and the two documents entitled "Settlement Agreement," implied or express approval of which may be the object of the motions.

4. Granting the joint motions to remand may be construed to imply approval of the propriety of the two documents entitled "Settlement Agreement," which we are not able to give in the absence of an adequate record.

5. The absence of the DOE, and possibly others interested in restitution, as parties to the "Settlement Agreement" filed in No. 5–101 is significant and unexplained in light of the statutory and administrative duties of the DOE with respect to escrow funds resulting from violations of petroleum pricing and allocation statutes and regulations.

6. The two documents entitled "Settlement Agreement" may be construed as an attempt, without perfection of the appeals, to gain approval of this Court and to preserve these appeals if the two documents entitled "Settlement Agreement" are not approved and implemented by the District Court. See paragraph 4 of the "Settlement Agreement" filed in No. 5–101 implying that the Notice of Appeal in No. 5–101 is effective until withdrawn if and when the "Settlement Agreement" is approved, and the judgment of the District Court is modified pursuant thereto.

7. The scope and nature of the remand, if the joint motions to remand are granted, is not clear and may be construed as limited to approving and implementing the two documents entitled "Settlement Agreement" which have not yet been shown to be lawful and just in this Court.

8. Doubtful factual and legal questions are raised by many other provisions of the two documents entitled "Settlement Agreement," including the provisions in paragraph 3 of the "Settlement Agreement" filed in No. 5–101 prohibiting assertion of its effect "... as evidence of or authority for any factual or legal proposition in any other proceeding ... including particularly propositions respecting (a) either the presence or absence of actual injury to Cities Service or the intervenor States collectively or individually, (b) the existence or nonexistence of any right to receive restitution pursuant to section 209 of the Economic Stabilization Act of 1970 ... in the absence of injury, or (c) any person's right to receive restitution in any other action pursuant to the ESA." In this connection, among other things, the terms and status of the Remedial Order of DOE in *In re Estate of H.L. Hunt,* Case No. 6A0C00027 referred to in the Notice of Appeal of the States in No. 5–101 are not in the record in No. 5–101.

9. In the absence of an adequate Record on Appeal we cannot determine the preliminary question of the primary jurisdiction of the DOE to determine administratively, among other things, the facts,

standards and methods applicable in identifying injured parties, extent of injury and parties entitled to distribution in restitution of funds obtained in violation of petroleum price regulations and held in escrow under judicial orders. See Memorandum Opinion in *Prosper Energy Corporation v. Department of Energy, Ray L. Hunt Independent Executor of the Estate of H.L. Hunt v. Department of Energy, Exxon Corporation v. Department of Energy,* (N.D. Tex.1982), 549 F.Supp. 300 (which may be related); *United States v. Exxon Corporation,* (D.D.C.1983), 561 F.Supp. 816 at 854–857; *Citronelle-Mobile Gathering, Inc. v. Edwards,* (Em.App.1982) 669 F.2d 717; and authorities cited in these cases. Nor can we determine possible applications of the associated exhaustion of remedies and ripeness doctrines. *Hawthorne Oil & Gas Corporation v. Department of Energy,* (Em.App.1981) 647 F.2d 1107.

10. In the absence of adequate briefs and a Record on Appeal, we cannot determine the nature and extent of judicial powers, duties and discretion in the restitution of funds obtained in violation of petroleum price regulations and held in escrow under judicial orders.

11. In Nos. 5–101 and 5–102 the appellants have not perfected their appeals by filing the Record on Appeal and briefs. Apparently they assumed, without Court approval, that filing the joint motion to remand and exhibits satisfied those obligations, at least temporarily. Under the circumstances, the appeals will not be dismissed, but appellants will be required to perfect their appeals by filing the Record on Appeal and briefs on or before May 24, 1984.

12. The joint motions to remand will be denied without prejudice to their resubmission to the Court after the Record on Appeal and briefs of the parties have been filed.

For the foregoing reasons, it is hereby

ORDERED that the joint motions to remand, filed in Nos. 5–101 and 5–102, be and they are hereby denied without prejudice. It is further

ORDERED that the defendants-appellants and the intervenors-appellants file their Record or Records on Appeal and briefs on or before May 24, 1984, with subsequent filing of additional briefs to follow as provided in the Rules of this Court.